﻿Citation Nr: AXXXXXXXX
Decision Date: 01/04/19 Archive Date: 01/04/19

DOCKET NO. 180816-275
DATE: January 4, 2019

ORDER

Severance of service connection for headaches resulting from head trauma was proper.

FINDINGS OF FACT

1. The Veteran had active service from July 1988 to Feb 1995.

2. In an October 2014 rating decision, the Regional Office (RO) severed service connection for headaches resulting from head trauma due to willful misconduct.

3. The evidence establishes that the grant of service connection of headaches resulting from head trauma was clear and unmistakable error (CUE).

CONCLUSION OF LAW

The severance of service connection for headaches resulting from head trauma was not CUE. 38 U.S.C. §§ 1110, 1131, 5103A (2012); 38 C.F.R. §§ 3.1, 3.102, 3.105, 3.159, 3.301, 3.303, 20.1403 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), as also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program 

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the August 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. He timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

Service connection may be granted on a direct basis as a result of disease or injury incurred in service based on nexus using a three-element test: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred in or aggravated by service. See 38 C.F.R. §§ 3.303(a), (d); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009). 

As relevant, 38 U.S.C. § 1131 provides that “[f]or disability resulting from personal injury suffered or disease contracted in line of duty in the active military, the United States will pay to any veteran thus disabled compensation but no compensation shall be paid if the disability is a result of the veteran’s own willful misconduct or abuse of alcohol or drugs.” 

Under 38 C.F.R. § 3.301(a), “[d]irect service connection may be granted only when a disability was incurred or aggravated in line of duty, and not the result of the veteran’s own willful misconduct or, for claims filed after October 31, 1990, the result of his or her abuse of alcohol or drugs.” 38 C.F.R. § 3.1(m) defines “[i]n line of duty” as “an injury or disease incurred or aggravated during a period of active military, naval, or air service unless such injury or disease was the result of the veteran’s own willful misconduct or, for claims filed after October 31, 1990, was a result of his or her abuse of alcohol or drugs.” 38 C.F.R. § 3.1 (m) defines “[w]illful misconduct” as “an act involving conscious wrongdoing or known prohibited action.” 

Under 38 C.F.R. § 3.301(c)(2), the simple drinking of alcoholic beverage is not of itself willful misconduct. The deliberate drinking of a known poisonous substance or under conditions which would raise a presumption to that effect will be considered willful misconduct. If, in the drinking of a beverage to enjoy its intoxicating effects, intoxication results proximately and immediately in disability or death, the disability or death will be considered the result of the person’s willful misconduct.

Once a decision that establishes an effective date becomes final, such a decision can only be revised is if it contains CUE. See Rudd v. Nicholson, 20 Vet. App. 296, 300 (2006) (holding that any other result would vitiate the rule of finality). 

Under the provisions of 38 C.F.R. § 3.105(a), previous determinations that are final and binding will be accepted as correct in the absence of CUE. A claim of CUE is a form of collateral attack on an otherwise final rating decision by a VA regional office. See Disabled Am. Veterans v. Gober, 234 F.3d 682, 696-98 (Fed. Cir. 2000). 

For CUE to exist: (1) either the correct facts, as they were known at that time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied; (2) the outcome would have been manifestly different if the error had not been made; and (3) the error was based on the record and law that existed at the time of the prior adjudication in question. Damrel v. Brown, 6 Vet. App. 242, 245 (1994) (quoting Russell v. Principi, 3 Vet. App. 310, 313-14 (1992)).

To obtain a finding based on CUE, such an error must be obvious and the type of error that reasonable minds would concur should have manifestly altered the outcome of the VA’s decision. Such an error must be undebatable; “that is, reasonable minds could only conclude that the original decision was fatally flawed at the time it was made.” Graves v. Brown, 6. Vet. App. 166, 170 (1994). 

The following are examples of situations that are not CUE: (1) a new medical diagnosis that corrects an earlier diagnosis considered in the decision; (2) the Secretary’s failure to fulfill the duty to assist; and (3) a disagreement as to how the facts were weighed or evaluated. 38 C.F.R. § 20.1403(d). Moreover, CUE does not include the otherwise correct application of a statute or regulation where, subsequent to the decision challenged, there has been a change in interpretation of the statute or regulation. 38 C.F.R. § 20.1403(e)

In this case, the STRs contain records of multiple facial/head injuries stemming from different causes. First, in December 1989, he sustained a laceration on his scalp and stated to the examiner that he felt the onset of a headache afterward; alcohol was not involved. Next, in June 1993, he was involved in an assault while intoxicated and suffered injuries to his face and eye. When he reported for treatment after the incident, his Blood Alcohol Content (BAC) was determined to be 0.29. 

Third, in an April 2014 Statement in Support of Claim, he reported that in 1993 he was working when he tripped on a tie down chain and hit his head on an aircraft; however, the STRs reflect that he was involved in a fight in March 1993 and alcohol was involved. Finally, in March 1994, he presented to the hospital with double vision, a fractured nose, and face bruises that he incurred after “rough-housing” and hitting his head on a coffee table where alcohol was also involved. 

In his original application for benefits, the Veteran identified December 1991 as the date of his head injury but the records do not reflect treatment for a head injury during that time frame. Nonetheless, in November 2006, he was granted service connection for headaches as a result of head trauma due to the June 1993 assault. In December 2011, he filed a claim for an increased rating for headaches. After review of the evidence, the RO determined that the head injury sustained in June 1993 was a result of his own willful misconduct and severed service connection in an October 2014 rating decision. 

The Veteran contends that the RO’s decision to sever service connection in October 2014 was erroneous. Specifically, he contends that the RO improperly concluded that the injuries he sustained in June 1993 was not incurred in the line of duty but instead resulted from his own misconduct. He asserts that the November 2006 rating decision that granted service connection for headaches was not the result of CUE.

As reflected in his service treatment records (STRs), the Veteran has been found to have abused alcohol on multiple occasions. In July 1993, he admitted to failing to report for duty due to being intoxicated the night before. In an October 1994 drug and alcohol screening evaluation, he was determined to be an alcohol abuser and alcohol dependent. In November 1994, he was arrested for driving under the influence (DUI) while in service. This pattern of misconduct resulted in his separation from service in January 1995. 

In an August 2013 decision, the RO contended that having a BAC far in excess of the legal limit of 0.1 (the legal limit as defined by the National Safety Council at the time) resulted in a presumption of intoxication. Therefore, a disability incurred as a result of intoxication would constitute willful misconduct and warrant severance of service connection. 

In response, the Veteran argued in his May 2017 appellate brief that the only head injury he incurred due to intoxication occurred in June 1993. Therefore, he contended, the severance of service connection based on his reported level of intoxication in June 1993 was CUE, in that the RO did not show that all of his head injuries were a result of willful misconduct. 

Turning to the June 1993 STR that formed the basis of the grant of service connection, it is clear and unmistakable that the Veteran’s BAC was 0.29. While his drinking of alcohol itself was not considered willful misconduct, the intoxication from alcohol, as demonstrated by a BAC of 0.29, well over the then-legal limit of 0.1 (the BAC is now 0.08 with 0.20 indicating very serious intoxication), the resulting disability (in this case, the grant of service connection for headaches) was the result of the Veteran’s willful misconduct and the grant of service connection based on an injury from that willful misconduct is CUE and severance was appropriate.

As reflected in the record, the Veteran’s in-service alcohol use caused him to neglect his duties, drive while intoxicated, and injure himself. His contention that the June 1993 injury was the only one where alcohol was involved is not supported by the record. Specifically, a March 1993 treatment record reflects that he was involved in a fight and alcohol was involved, and in March 1994, he sought treatment for a broken nose after “rough-housing” where alcohol was also involved. The only facial/head injury reported in the STRs that did not involve alcohol was a laceration to the scalp.

Therefore, the November 2006 rating decision that granted service connection for headaches was CUE as the evidence shows that, despite his contentions to the contrary, his facial/head injuries which ultimately lead to a claim for headaches were the result of injuries sustained in June 1993 while intoxicated. 

The October 2014 rating decision that severed service connection was supported by the evidence of record at that time and was consistent with the laws and regulations then in effect. Further, the Veteran’s appellate argument that the RO placed greater weight on the head injury incurred in the June 1993 assault when severing service connection is not sufficient for a finding of CUE. 38 C.F.R. § 20.1403(d).

As such, the November 2006 rating decision was the result of CUE and the October 2014 rating decision that severed service connection was proper. As such, the appeal is denied. 

Finally, the Veteran has not raised any other issues, nor have any other issues been reasonably raised by the record, for the Board’s consideration. See Doucette v. Shulkin, 28 Vet. App. 366, 369-370 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

 

L. HOWELL

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD D. Ragofsky, Legal Clerk